334 F.2d 763
 C. E. H. McDONNELL, Successor Trustee to Murray Ferguson, Trustee Under Chapter X Reorganization Proceeding for Equitable Plan Company, Debtor,
v.
BUCKS COUNTY FARMS, INC. (United States of America, intervenor in D. C.) Merrie V. Birrell, Claimant, Appellant.
 No. 14671.
 United States Court of Appeals Third Circuit.
 Argued March 12, 1964.
 Decided July 16, 1964.
 
 Stephen I. Weiss, Cameron, Bell & Weiss, Trevose, Pa., for appellant.
 James B. Doak, Philadelphia, Pa. (LaBrum & Doak, Philadelphia, Pa., on the brief), for appellee.
 Before BIGGS, Chief Judge, and HASTIE and SMITH, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 The case at bar is complicated in its facts. It appears that in 1946, Lowell Birrell purchased, with his own money, eleven pieces of real estate in Bucks County, Pennsylvania, title to which was taken by him and by his wife Merrie Birrell, the claimant-appellant, as tenants by the entireties. It does not appear that Mrs. Birrell contributed any of her own assets to the purchase of any of these lands. Two portions of the lands so acquired and so taken, one consisting of 100.27 acres, the other of 39.938 acres, with the buildings thereon, were known as "Echo Falls Farms" and will be so designated in this opinion. The main house and the guest house were furnished by purchases made by Lowell Birrell using his money. Again, it appears that Mrs. Birrell made no monetary contribution. On a date not certain from the record, but not critical here, a $55,000 first mortgage was placed on Echo Falls Farms by the Birrells with the Doylestown National Bank and Trust Company and after various decreases and increases remained at $55,000. Thereafter on December 26, 1956, the Birrells transferred Echo Falls Farms and all the personal property on the premises to Bucks County Farms, Inc. (Bucks), a Delaware corporation registered to do business in Pennsylvania. Bucks agreed at about this time to assume the obligation of the $55,000 first mortgage given by the Birrells to the Doylestown Bank.
 
 
 2
 Previously to the event last mentioned and on October 31, 1956, Bucks had executed a promissory note in the sum of $150,000 with interest at ten per cent per annum, payable on April 30, 1958, to the order of Equitable Plan Corporation (Equitable), a California industrial loan corporation. On May 29, 1958, Murray Ferguson was appointed a Trustee for Equitable in a Chapter X reorganization proceeding in the United States District Court for the Southern District of California. On September 17, 1959, Ferguson filed a complaint, in the suit at bar, at our number 14,671 supra, seeking the amount of $189,489.30 in order to obtain payment of the note with interest. Foreign attachments were issued and were duly served on September 24, 1959, against the real estate of Bucks including Echo Falls Farm. The present claimant-appellee, McDonnell, is Ferguson's successor Trustee.
 
 
 3
 Bucks is alleged to have given a second mortgage in the amount of $88,500 on Echo Falls Farms to Quipo, S.A. (also know as Cuipo), described in the mortgage as a Panamanian corporation. The mortgage is dated December 26, 1956, but was not recorded until March 19, 1958, approximately sixteen months after it is said that it was given. Apparently, at about the same time, Bucks entered into a lease with Lowell Birrell for Echo Falls Farms at a monthly rental of $750. No rental was ever paid to Quipo and no interest or principal was ever paid on the mortgage. A letter written by the Panamanian Minister of Agriculture, Commerce and Industries, under date of December 9, 1959, appears in evidence, in which it is stated that "in the Department of Commerce of this Ministry there is no concern registered with the name of Quipo, S. A." No one representing Quipo has appeared in the instant proceedings, nor, insofar as the record shows, has anyone received any communications from it.
 
 
 4
 Bucks recorded the purchase of Echo Falls Farms and the personalty thereon by journal entries on its account books, dated December 31, 1956. The consideration for the purchase was shown as consisting of the first mortgage, in the sum of $55,000 assumed by Bucks, and of the second mortgage to Quipo, in the amount of $88,500 created when and how we have stated. The total of these two sums is $143,500. Of this amount $69,000 was shown as allocated to buildings, $34,000 to land, and $40,000 to household furniture and furnishings. A notation to this stated that the second mortgage was given on a letter of instruction from Lowell Birrell to Quipo in full payment for all equities acquired from Lowell Birrell and for a collateral deed held by Mrs. Birrell which was to be surrendered and cancelled.
 
 
 5
 About 1957, the stock of Bucks' was acquired by "L. L. Constantin & Company", a New Jersey corporation engaged in the manufacture and sale of electronic components. It appears that when receivers were appointed by the court below for Bucks on October 30, 1959, Quipo, if it existed, owned all of the stock of Constantin. Lowell Birrell was the president, or the chairman of the board, or at least in control of Constantin, which paid him a salary of $44,000 a year and gave him an expense account.
 
 
 6
 After various legal steps had been taken which need not be related here, some of which are referred to in our opinion in Ferguson v. Bucks County Farms, Inc., 280 F.2d 739 (1960), the receivers appointed by the court below proceeded with the administration of the estate. Eventually, on April 21, 1961, the successor Trustee, McDonnell, received a judgment against Bucks on the note in the amount of $206,824.07. The receivers, acting pursuant to an order of the court below, sold the real estate and certain personal property. The receivers filed a first account and a second and final account, both of which were approved by the court below.
 
 
 7
 Mrs. Birrell objected to the confirmations of these sales but her objections were overruled by a decree of the lower court dated July 5, 1961. From this decision, Mrs. Birrell appealed to this court. We wrote no opinion but dismissed the appeal on October 3, 1961, by a decree which provided that Mrs. Birrell might assert her claim against the funds procured by the receivers of Bucks from the sale of the property.[1]
 
 
 8
 On April 3, 1963, the court below entered an order fixing a time for the filing of all claims of creditors and lien holders or others asserting rights to priority payments from these funds and fixed June 7, 1963, as the time of the hearing. Notice was duly given. On May 1, 1963, Mrs. Birrell filed her claim asserting in substance that she was the owner of Echo Falls Farms by virtue of certain deeds referred to hereinafter and was entitled to the property. Mrs. Birrell's claim was objected to by the United States which asserted a tax claim, by certain other claimants, and by the receiver of Equitable. The court below by its order of August 5, 1963, dismissed and denied the objections and claims of the other claimants, disallowed Mrs. Birrell's priority claim, and accorded priority in payment to the judgment obtained by Equitable. The appeal at bar followed.
 
 
 9
 The court below treated the order of this court set out below as having the effect of rendering the present issue res judicata. The court below stated in its opinion, in part: "[T]he matter may be considered as res adjudicata in view of the quoted order of the Court of Appeals. It provided, as did the order of this Court from which appeal was taken, that `the claim of appellant against the real estate * * * may be asserted by her against the fund to be realized by that sale.' The reference is doubtless to the claim under the second mortgage. Had title in Mrs. Birrell been recognized by the Court of Appeals, it is unlikely that it would have permitted the sale to proceed."
 
 
 10
 We cannot agree with this interpretation of our order. We decided nothing in respect to the merits of Mrs. Birrell's claims. We held merely that she should assert them against the fund and not against the real estate, which was about to be and which was sold. The principle of res judicata is not applicable here.
 
 
 11
 We return now as a starting point to the objections of Mrs. Birrell, made on June 12, 1961, to the confirmation of the sale of the Echo Falls Farms real estate which were overruled by the court below, and on which Mrs. Birrell's present position is based. She asserts that she received no consideration for the transfer of her interest as tenant by the entireties to Bucks by the deeds dated December 26, 1956, and that she was not aware of what she was doing when she signed the deeds. She did, however, execute separate acknowledgements in the usual form before a notary public. Furthermore, she asserts that she has in her possession deeds dated January 2, 1957, from Bucks conveying to her as tenant by the entireties the same real estate, constituting Echo Falls Farms, which she joined with her husband in conveying to Bucks on December 26, 1956. Mrs. Birrell admits that the two deeds of Bucks dated January 2, 1957, were not recorded because, so she says, she was unaware of the importance of recording them. She also refers to the second mortgage given by Bucks to Quipo in the amount of $88,500 on Echo Falls Farms which mortgage was recorded. Mrs. Birrell states that she possesses an assignment executed in blank by the president of Quipo, the assignment being dated, according to her statement, January 14, 1959. She concedes that this assignment was never recorded.[2]
 
 
 12
 We come now to the merits of the controversy insofar as we can adjudge them on the present record in the light of the findings and of the opinion of the court below. The effective date of the foreign attachments upon which Equitable's judgment in the sum of $206,824.07 was based was September 24, 1959. 21 P.S. § 351 provides that unrecorded deeds shall be "adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice * * *." It appears that the other claimants did not have notice of the unrecorded deeds until June 1961. The unrecorded deeds of January 2, 1957, from Bucks to Mrs. Birrell, as the court below correctly found, can give Mrs. Birrell's claim no validity against Equitable's judgment.
 
 
 13
 In respect to the Quipo mortgage and its assignment, problems are presented which we believe cannot be determined on the present record in the absence of definite findings by the court below. We point out that the court below did not decide whether Quipo, S. A. was or was not a corporation actually in esse or was a figment of Lowell Birrell's imagination. We refer again to the fact that the Panamanian Minister of Agriculture, Commerce, and Industries stated that there was "no concern" registered with his ministry under the name of Quipo, S. A. If Quipo was not a de jure corporation, surely it can scarcely be described as a de facto one for it seems to have existed, if it existed at all, on paper. The court below must decide whether Quipo was or was not a legal entity. If Quipo was a legal entity was there any consideration given by it for the $88,500 second mortgage which it received from Bucks. There was no finding by the court below on this point. What was the significance, if any, of the Bucks' journal entry, made at about the time the second mortgage was given, stating that "a collateral deed" held by Mrs. Birrell was to be surrendered and cancelled? Was the "collateral deed" referred to in the journal entry perhaps the assignment of the Bucks' second mortgage alleged to have been given by it to Quipo? We are without a finding by the court below in respect to the so called "collateral deed".
 
 
 14
 If there was no valid consideration for the second mortgage it was a legal nullity and an assignment of the mortgage would be without legal significance. Was the second mortgage made in fraud of Bucks' creditors? If it was so made, the mortgage is voidable by a court of equity upon a proper showing, and a court of bankruptcy is a court of equity. Was there any consideration moving from Mrs. Birrell for the assignment to her by Quipo of the second mortgage? The assignment insofar as we can ascertain from the imperfect photostatic copy attached to the plaintiff's appendix does not name any assignee whatsoever. This portion of the assignment, or "deed poll", is blank. No consideration whatsoever is shown. Mrs. Birrell does not state categorically that the assignment was delivered to her. She has testified only that she found the assignment with the deeds in a hatbox. She has not stated or proved the time when the assignment was received by her, and in fact she claims no substantial recollection in respect to any phase of this matter. The court below has made no definitive finding and has expressed no conclusion as to whether or not the assignment was in fact made to her or if she is legally entitled thereto. It will be necessary for the court below to dispose of this issue on remand.
 
 
 15
 In so far as we can ascertain from the confused record, Mrs. Birrell does not claim the beneficial interest in the mortgage by virtue of stock ownership in Bucks or in Constantin or even in Quipo. Indeed such a position could not help her for it cannot be asserted successfully that stock ownership in a corporation would entitle a stockholder to a claim superior to that of the holder of a valid judgment supported by valid foreign attachments against the corporation.
 
 
 16
 If on the other hand the court below were to find that Quipo never existed, the mortgage given to it would be invalid and an assignment of the mortgage would be nil. Mrs. Birrell would have received nothing therefrom.
 
 
 17
 Mrs. Birrell's underlying position, however, is that she should have the benefit of a resulting trust arising from the transfer of her tenancy by the entireties to Bucks on December 26, 1956. But in the same breath, so to speak, she asserts that she received the property transferred on December 26, 1956, back from Bucks by the unrecorded deeds of January 2, 1957. This position is inconsistent with her assertion of resulting trust because it demonstrates, we think, that she was looking toward securing the legal title to the Bucks' real estate rather than to any equitable interest in Bucks. As we have stated, she claims no stock interest in Bucks or in any of the other corporations mentioned in this opinion. Indeed had she been entitled to the benefits of a resulting trust when she transferred her tenancy by the entireties to Bucks, by deeding it away, she could get back only an interest analagous in nature to a stock interest in Bucks. To put the matter in another way it is difficult to see any res on which a trust could be impressed under the circumstances at bar, for at best, when Mrs. Birrell deeded her tenancy by the entireties in Echo Falls Farms, she became entitled at most, only to an equitable interest in the general assets of Bucks. Such a claim could not in any event rise superior to a valid judgment against Bucks.
 
 
 18
 Mrs. Birrell's claim, therefore, may have to rest on the validity of the Quipo mortgage and on the validity of the assignment of the Quipo mortgage to her, but as to these issues, on the present state of the record and the insufficient findings of fact made by the court below, we cannot and do not express any opinion.
 
 
 19
 Finally we point out that the second mortgage, i. e., the mortgage to Quipo was stated by the court below in its opinion not to affect "more than 20 per cent of the property in question [Echo Falls Farms] and that there is outstanding against this claimant a substantial counterclaim for land appropriated, furniture and personal property owned by Bucks County." Again we have no definitive findings by the court below though we can ascertain from the record that Echo Falls Farms comprised approximately 140 acres and that the whole estate consisted of approximately 800 acres and that the furnishings were carried on the journal entry of Bucks, heretofore referred to, in the amount of $40,000. All other considerations aside, the counterclaim against Mrs. Birrell, if valid, might wipe away any equity which otherwise she might possess, but again as to this we cannot and do not express any definite opinion. Respecting these matters, if they be found to be necessary for a decision, findings of fact and conclusions of law must be made by the court below.
 
 
 20
 Under the circumstances we can pursue no other course than to vacate the judgment of the court below and remand the case to the end that the trial court may take additional testimony, if it deems that to be necessary, and to make findings of fact and conclusions of law as may be required. It will be so ordered.
 
 
 
 Notes:
 
 
 [1]
 Our order was as follows: "Upon consideration of the motion by Stanley B. Smullen and William L. Fox, Receivers of Bucks County Farm, Inc., to docket and dismiss the appeal by Merrie V. Birrell as moot, and of the briefs in support of and in opposition to the motion to dismiss, and after hearing; * * *
 "It is further ORDERED that the appeal in the above entitled case be, and it is hereby dismissed, provided, however, that the claim of appellant against the real estate which is the subject of the District Court decree of July 5, 1961, may be asserted by her against the fund to be realized by that sale."
 
 
 [2]
 Mrs. Birrell also refers to a deed executed by the president of Bucks transferring a small tract of land, approximately 9.1 acres, sold by the receivers of Bucks, but it is not clear how she asserts a claim to this land or to the proceeds thereof. The 9.1 acres seemingly were not a part of Echo Falls Farms but of this we cannot be certain. If the deed which Mrs. Birrell referred to and the operative facts surrounding it be pertinent to the instant controversy the court below should adjudicate this matter upon remand